UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**YOLETTE CHERESTAL,**

      Plaintiff,

v.                                  Case No: 6:12-cv-1681-Orl-28TBS

**SEARS ROEBUCK & CO.,**

      Defendant.

## ORDER

In 2009, Plaintiff Yolette Cherestal was employed by Luxottica Retail North America, Inc. at its optical shop located within Sears Roebuck & Co.'s store in the Florida Mall. Luxottica fired Ms. Cherestal after she was stopped by a Sears employee who suspected she was leaving the store with Sears merchandise that she had not purchased. Ms. Cherestal then sued Sears, seeking compensatory and punitive damages on various grounds, including false imprisonment (Count I) and tortious interference with a business relationship (Count III).[1] Sears filed a motion for summary judgment, alleging that there is no genuine dispute as to any material fact pertaining to the claims of tortious interference and punitive damages and that it is entitled to a judgment as a matter of law on those claims. I agree.

### I. Background

Luxottica owns and operates optical shops located in some Sears stores. Ms.

---

[1] The Complaint (Doc. 2) contained four counts. Counts II and IV were dismissed (Doc. 33), and the remaining counts are false imprisonment and tortious interference with a business relationship.

Cherestal was an optician employed by Luxottica from February 2007 until December 2009, (Cherestal Dep. 1, Doc. 41-1, at 84:1-5 & Doc. 41-3, at 30:17-20), when she was terminated, (Corrective Action Record, Doc. 41-5, at 40). At the time of her termination, Ms. Cherestal was working at the optical shop in the Florida Mall under the direction of store manager Kim Hamilton. (See id.; see also Cherestal Dep. 2, Doc. 40-1, at 27:12-28:5). The undisputed events that led to Ms. Cherestal's termination are as follows.

On occasion, Ms. Cherestal shopped at Sears during her employment with Luxottica, sometimes during her scheduled work shift. (Cherestal Dep. 2, Doc. 40-1, at 28:6-29:9). Though Ms. Cherestal stated that she was given permission to shop at these times, (see id. at 29:4-9), Ms. Hamilton testified that Ms. Cherestal was informed that shopping while clocked in for work was prohibited, (Hamilton Dep., Doc. 42-1, at 54:11-56:12). Sears's loss prevention manager, Arlyss Cabrera, became suspicious of Ms. Cherestal in late 2009 after Mr. Cabrera noticed "questionable activity" and potential store policy violations by Ms. Cherestal. (Cabrera Dep., Doc. 39-1, at 91:15-23). Mr. Cabrera believed Ms. Cherestal was violating store policy by shopping when the store was closed and holding items for later purchase. (Id. at 90:17-23). He thought her conduct gave her the opportunity to steal clothing. (Id. at 91:24-92:2). For this reason, Mr. Cabrera spent a great deal of time conducting surveillance of Ms. Cherestal through closed circuit television monitoring, particularly on December 26, 2009. (See id. at 134:18-135:3, 84:8-9). On that day, he observed Ms. Cherestal purchasing items, and he saw her leave the store with the items without checking out at the loss prevention office, which is a violation of Sears's policies. (See id. at 79:18-80:2; 84:1-85:6).

Mr. Cabrera then stopped Ms. Cherestal outside of the Sears store. (Id. at 85:7-

19; Cherestal Dep. 2, Doc. 40-1, at 53:16-54:7). He compared the items in Ms. Cherestal's possession with the items listed on her receipt and found that she had an extra shirt that was not accounted for on the receipt. (Cherestal Dep. 1, Doc. 41-2, at 145:14-21; Cabrera Dep., Doc. 39-1, at 86:14-21). Mr. Cabrera had not seen Ms. Cherestal put the unpaid merchandise into her bag, and he was unable to conclude how it got there. (See Cabrera Dep., Doc. 39-1, at 121:15-23). Mr. Cabrera brought her to the loss prevention office while he attempted to determine the cause of the discrepancy. (See Cherestal Dep. 2, Doc. 40-1, at 77:10-17; Cabrera Dep., Doc. 39-1, at 112:15-25).

While she was in the loss prevention office, Ms. Cherestal called one of her supervisors, Yesenia Lopez, for assistance. (Cherestal Dep. 1, Doc. 41-3, at 3:11-20; see also Hamilton Dep., Doc. 42-1, at 43:10-18). Ms. Lopez then notified Ms. Hamilton of the situation, and Ms. Hamilton called Mr. Cabrera for details. (Hamilton Dep., Doc. 42-1, at 43:10-24; see also Cabrera Dep., Doc. 39-1, at 178:13-16). Mr. Cabrera told Ms. Hamilton that Ms. Cherestal was in the loss prevention office "because there was something in her bag that had not been paid for on a receipt and that they had her . . . leaving the store multiple times." (Hamilton Dep., Doc. 42-1, at 44:3-6; accord Cabrera Dep., Doc. 39-1, at 180:13-181:9). Ms. Hamilton inquired further about the reported instances of Ms. Cherestal leaving the store. (Hamilton Dep., Doc. 42-1, at 44:7-8). Luxottica, through Ms. Hamilton and its own loss prevention department, also launched an investigation into Ms. Cherestal's behavior. (Id. at 44:17-23). It is unclear whether any Luxottica employees actually viewed the Sears videotapes or whether Mr. Cabrera simply gave them the information they requested from the tapes. (Id. at 44:19-23; Cabrera Dep., Doc. 39-1, at 183:8-184:9). It is undisputed, however, that Luxottica

(Proceeding)
---

requested and received information from Mr. Cabrera regarding times that Ms. Cherestal left the store while clocked in to work. (Hamilton Dep., Doc. 42-1, at 44:17-45:5; Cabrera Dep., Doc. 39-1, at 183:23-25).

Ultimately, Mr. Cabrera told Ms. Hamilton "that he would prefer that Ms. Cherestal no longer worked in that store," and Ms. Hamilton responded that she could not "promise [him] that." (Hamilton Dep., Doc. 42-2, at 44:13-23; accord Cabrera Dep., Doc. 39-1, at 185:14-21). Mr. Cabrera also sent a summary report of the incident to Luxottica's loss prevention manager who responded, "Does it show when [Ms. Cherestal] comes back in on the 21st?" (See Doc. 39-3 at 15).

After her shift on December 28, 2009, Ms. Cherestal was terminated from employment at Luxottica. (Cherestal Dep. 1, Doc. 41-3, at 27:4-29:13). Paperwork from Luxottica states that the reason for Ms. Cherestal's termination was that she left the store "for approximately 1.5 hours while on the clock," on December 26, 2009[2] (Doc. 41-5 at 40), and Ms. Hamilton gave Ms. Cherestal the same reason when she was terminated, (Cherestal Dep. 1, Doc. 41-3, at 28:6-8, 29:11-13).

Ms. Cherestal filed this case, bringing claims of false imprisonment and tortious interference with an advantageous employment/business relationship. Sears now seeks summary judgment only on the tortious interference count and on Ms. Cherestal's claims for punitive damages in both counts.

---

[2] The Corrective Action Report also states that Ms. Cherestal was out of the store for three hours while on the clock on December 5, 2009. (Doc. 41-5 at 40). Ms. Cherestal argues that this absence was authorized by Luxottica, but any authorization by Luxottica has no bearing on the tortious interference claim against Sears.

## II. Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). That burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

In ruling on a motion for summary judgment, a court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, and it may not weigh evidence or determine credibility. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). "'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.' Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the [factfinder] or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Conaway v. Smith, 853

5

F.2d 789, 794 (10th Cir. 1988), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)); see also LaRoche v. Denny's, Inc., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III. Tortious Interference Claim

In Count III, Ms. Cherestal alleges that Sears tortiously interfered with an advantageous employment or business relationship. (Doc. 2 at 11-13). "The elements of tortious interference with a business relationship are '(1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.'" Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994) (alteration in original) (quoting Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985)); accord Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc., 262 F.3d 1152, 1154 (11th Cir. 2001).[3] "[E]mbedded within the essential elements of the tort of intentional interference with a business relationship is the legal requirement that the plaintiff prove causation." St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc., 784 So. 2d 500, 504 (Fla. 5th DCA 2001). Sears does not dispute that the first two factors are present in this case, but it argues that Ms. Cherestal's claim fails because she cannot show an intentional or unjustified interference and because she cannot establish causation. (See Doc. 38).

---

[3] I apply Florida law in this case because jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. (See Order on Mot. Remand, Doc. 31). While sitting in diversity, federal courts must apply substantive state law. See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938); Bravo v. United States, 577 F.3d 1324, 1325 (11th Cir. 2009) (per curiam).

A.  Intentional Interference

As noted above, to succeed on a claim for tortious interference with a business relationship, a plaintiff must prove that the defendant intentionally interfered with the relationship. Ethan Allen, 647 So. 2d at 814. This requires a showing of malice. Rockledge Mall Assocs., Ltd. v. Custom Fences of S. Brevard, Inc., 779 So. 2d 554, 557 (Fla. 5th DCA 2001). Without direct evidence of malicious intent, malice can only be shown "'by proving a series of acts which, in their context or in light of the totality of the circumstances, are inconsistent with the premise of a reasonable man pursuing a lawful objective, but rather indicate a plan or course of conduct motivated by spite, ill-will, or other bad motive.'" Id. (quoting S. Bell Tel. & Tel. Co. v. Roper, 482 So. 2d 538, 539 (Fla. 3d DCA 1986)).

Sears argues that the evidence fails to show that Mr. Cabrera acted with the requisite intent, (Doc. 38 at 12-14), but Ms. Cherestal maintains that Mr. Cabrera's intent is a factual issue for the jury, (Doc. 43 at 19-20). Many of Mr. Cabrera's actions in December 2009—including monitoring Ms. Cherestal and stopping her upon an observed violation of policy—support only the inference that Mr. Cabrera was acting with the intent to fulfill his role as loss prevention manager of Sears. On the other hand, however, Mr. Cabrera admitted telling Ms. Cherestal's supervisor, Ms. Hamilton, that he would prefer that Ms. Cherestal not work at the store any longer, even though he was unable to conclude with certainty that she stole any items. This statement, in the context of Mr. Cabrera's position as the store's loss prevention manager, could reasonably be found by a jury to be proof of Mr. Cabrera's intent to interfere with Ms. Cherestal's business relationship with Sears. Thus, there is a genuine dispute of material fact on the issue of intent.

B.  **Unjustified Interference**

A plaintiff in a tortious interference case also must prove that a defendant unjustifiably interfered with a business relationship. Ethan Allen, 647 So. 2d at 814; see also Tardif v. People for Ethical Treatment of Animals, 829 F. Supp. 2d 1219, 1231 (M.D. Fla. 2011) (quoting Networkip, LLC v. Spread Enters., Inc., 922 So. 2d 355, 358 (Fla. 3d DCA 2006)). "No cause of action for intentional interference exists which is the consequence of a rightful action." Networkip, 922 So. 2d at 358. Additionally, a plaintiff cannot be successful in a tortious interference case if the defendant merely gave a third party truthful information. Worldwide Primates, Inc. v. McGreal, 26 F.3d 1089, 1092 (11th Cir. 1994) (citing Restatement (Second) of Torts § 772); see also Fox Sports Net N., LLC v. Minn. Twins P'ship, 319 F.3d 329, 337 (8th Cir. 2003). "Under Florida law, a company's actions are justified when undertaken to protect its own business interests, such as to reduce the risk of loss. So long as the company does not engage in improper conduct, it may take steps to protect its business interests without liability for tortious interference." Romika-USA, Inc. v. HSBC Bank USA, N.A., 514 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007). Some cases indicate that if damages from a legally cognizable intentional interference are shown, "the burden shifts to the interferer to establish that the interference was justified." Wackenhut Corp. v. Maimone, 389 So. 2d 656, 658 (Fla. 4th DCA 1980).

Mr. Cabrera made no material false statements. Ms. Cherestal does not argue that Mr. Cabrera provided false information to Luxottica regarding the times she was away from the store. She instead asserts that Mr. Cabrera cast her in a negative light with Luxottica, which led to her termination. Ms. Cherestal also argues that Mr. Cabrera had no justification to provide information about the case investigation to Luxottica, arguing that the question for the Court to determine is whether it "would . . . be intentional and

8

unjustified interference for Mr. Cabrera to contact [an external shoplifter]'s employer and to provide the employer the details of his case investigation like Mr. Cabrera did with Ms. Cherestal and Luxottica." (Doc. 43 at 18). However, Ms. Cherestal's employment with Luxottica was different from an external shoplifter's outside employment. Ms. Cherestal worked within the Sears store, and Sears's loss prevention team was justified by its business interest in reporting truthful information to her supervisor regarding suspected violations of Sears's loss prevention policies.

Though Mr. Cabrera's actions of providing Luxottica with truthful information were justified, his statement that he would prefer that Ms. Cherestal not work at the store is another matter. By giving such an opinion, he was not simply reporting truthful information. A jury could reasonably determine that this statement and any other similar statements that Mr. Cabrera made were unjustified. An issue of material fact remains regarding justifiability.

### C. Causation

To prevail on a claim for tortious interference with a business relationship, a plaintiff must also prove that the defendant induced or otherwise caused a party to sever the business relationship. St. Johns River Water Mgmt. Dist., 784 So. 2d at 505. "The requisite showing of causation cannot be supported by mere supposition that defendant's interference caused the cessation of the business relationship." Realauction.com, LLC v. Grant St. Grp., Inc., 82 So. 3d 1056, 1059 (Fla. 4th DCA 2011).

While there is evidence to indicate that some of Mr. Cabrera's actions may have caused Ms. Hamilton and Luxottica to terminate Ms. Cherestal's employment, there is no evidence that any potentially unjustified actions caused her termination. Mr. Cabrera, as stated above, was justified in informing Ms. Hamilton about his truthful observations of

Ms. Cherestal's conduct, but a jury could find that he was unjustified in recommending Ms. Cherestal no longer work at the store. Nevertheless, the evidence reveals that the cause of Ms. Cherestal's termination was the truthful information contained in the videotapes.

Ms. Hamilton and the Corrective Action Report both stated that Ms. Cherestal was terminated because she left the store while clocked in, not because of Mr. Cabrera's preference that she no longer work at the store. Any information Mr. Cabrera included in the report to Luxottica's loss prevention team that Ms. Cherestal argues placed her in a negative light did not cause her termination and therefore was immaterial. The email from Luxottica's loss prevention manager sent in response to this report inquires only about the time Ms. Cherestal was absent on a particular date, showing that Luxottica's primary concern was Ms. Cherestal leaving the store. Ms. Cherestal provides no evidence other than her speculative opinion that she was fired for reasons other than her leaving the store during work hours. "Speculative testimony is not competent substantial evidence." Realauction.com, 82 So. 3d at 1059. There is no genuine dispute of material fact on the issue of causation, and for that reason Sears's motion for summary judgment (Doc. 38) must be granted as to Count III.

IV. **Punitive Damages**

In both Counts I and III, Ms. Cherestal asserts entitlement to punitive damages. (Doc. 2 ¶¶ 50, 70-71). To find a defendant liable for punitive damages in Florida, the defendant must be personally guilty of intentional misconduct or gross negligence. § 768.72(2), Fla. Stat. (2013). In addition, punitive damages can only be imposed on an employer, principal, corporation, or other legal entity if:

(a) The employer, principal, corporation, or other legal entity actively and

knowingly participated in such conduct;
(b) The officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct; or
(c) The employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant.

Id. § 768.72(3).

Sears argues that Ms. Cherestal is not entitled to punitive damages because she cannot make the showings required by the statute. In response, Ms. Cherestal argues that whether Mr. Cabrera's actions fall within the statute is a factual dispute.[4] (Doc. 43 at 20). She points to no evidence and makes no argument in her Response that Sears acted in a way that would meet the requirements of the statute. No evidence has been submitted that Sears knew of Mr. Cabrera's conduct or acted with gross negligence, and Ms. Cherestal has failed to provide any legal authority for her assertion that punitive damages would be justified. Thus, there is no genuine dispute of material fact as to whether Ms. Cherestal is entitled to punitive damages, and summary judgment for Sears on this issue is appropriate. See Taylor v. Gunter Trucking Co., Inc., 520 So. 2d 624, 624-25 (Fla. 1st DCA 1988); Howard v. Honda Motor Co., 723 F. Supp. 688, 689-90 (M.D. Fla. 1989).

V. Conclusion

It is **ORDERED** as follows:

---

[4] Ms. Cherestal also argues that Sears's previous motion to strike her allegations relating to punitive damages (Doc. 32) was denied, and that for this reason I should deny Sears's motion for summary judgment on the issue of punitive damages, (Doc. 43 at 20). The previous Order, however, regarded whether punitive damages were appropriately pleaded and has no bearing on whether there is a genuine dispute of material fact as to punitive damages.

1.  Because there is no genuine dispute of material fact regarding Count III or regarding punitive damages on Counts I or III, Sears's Motion for Summary Judgment on Count III and on Plaintiff's Claim for Punitive Damages (Doc. 38) is **GRANTED**.

2.  Count I remains pending, and this case remains set for trial during the March 2014 trial term.

**DONE** and **ORDERED** in Orlando, Florida on February 19, 2014.

Copies furnished to:
Counsel of Record

JOHN ANTOON II
United States District Judge